```
UNITED STATES DISTRICT COURT        FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
```

| SHAWN GADSDEN, | |
|---|---|
| Petitioner, | MEMORANDUM |
| - versus - | AND ORDER |
| SUPERINTENDENT WILLIAM LEE, | 12-CV-4204 (JG) |
| Respondent. | |

A P P E A R A N C E S

    By:    SHAWN GADSDEN
           # 08-A-3544
           Green Haven Correctional Facility
           P.O. Box 4000
           Stormville, NY 12582
           *Pro Se*

           CHARLES J. HYNES
           District Attorney
           Kings County District Attorney's Office
           350 Jay Street
           Brooklyn, New York, NY 11201
    By:    Allison Ageyeva
           Assistant District Attorney
           *Attorney for Respondent*

JOHN GLEESON, United States District Judge:

       Shawn Gadsden, appearing *pro se*, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Gadsden challenges his August 2006 conviction in New York State Supreme Court, Queens County, of one count of robbery in the first degree and one count of robbery in the second degree. Oral argument, at which Gadsden appeared by video conference, was heard on February 28, 2013. For the reasons stated below, Gadsden's petition is denied.

## BACKGROUND

    A.    *The Offense Conduct and Trial*

       The prosecution elicited the following evidence at Gadsden's trial.

At approximately 9:30 p.m. on July 31, 2006, Ernest Dixon was pulled over by the police on Greene Avenue in the Bedford-Stuyvesant neighborhood of Brooklyn. Tr. at 34-35. The police searched Dixon's car, ran his license plate, and then left. Tr. at 35. Dixon then went to speak to an acquaintance, Leandia Deas, in front of her apartment building at 545 Greene Avenue. *Id*. Dixon and Deas stood under a streetlight while they talked. Tr. at 36.

While speaking to Deas, Dixon saw Gadsden and another man enter the apartment building. Tr. at 36-37; 41-42. Moments later, Gadsden and the other man walked out of the building with masks covering their face and guns drawn. Tr. at 395. Gadsden had a cloth covering the lower half of his face and was wearing a "do-rag". Tr. at 43. The two men pointed their guns at Dixon (Tr. at 41) and Dixon began to move away, towards his car. Gadsden told Dixon "[d]on't move." Tr. at 41. Dixon recognized Gadsden's voice and remembered seeing him walk into the building a couple of minutes before. *Id.* at 42. Gadsden asked Dixon for his chain and took it from around his neck. *Id.* at 43-44. Dixon was focused on Gadsden while he took his chain. Tr. at 44. After Gadsden took Dixon's chain, the second person reached into his right pocket and grabbed his keys. *Id.* at 45. Gadsden and his accomplice then stepped back, and the accomplice threw the keys at Dixon's feet, saying "you can have these back." Tr. at 44. Gadsden and the accomplice then ran off while Dixon reached to pick up his keys. Tr. at 46. Gadsden and his accomplice did not take anything from Deas. Tr. at 401.

Dixon did not call the police because he did not want Deas to get involved since she lived "right across the street from where things happened," and he viewed the gold chain as "a materialistic item." Tr. at 46-47. Deas did not report the robbery because she was afraid. Tr. at 398.

Ten days later, Gadsden shot at Dixon while Dixon sat in his car at a stop light in the Bedrod-Stuyvesant section of Brooklyn. Dixon was shot twice in the arm but managed to drive to the 79th police precinct to report the shooting. Those events gave rise to attempted murder and assault charges, and Gadsden was tried on both the July 31, 2006 robbery and the August 10, 2006 shooting.

The jury found Gadsden guilty of robbery in the first degree and robbery in the second degree based on the earlier of the two incidents and acquitted him of the charges based on the alleged shooting. Tr. at 567.

The court sentenced Gadsden to concurrent terms of imprisonment of fifteen years for the robbery in the first degree conviction and five years for the robbery in the second degree.

    B.    *Direct Appeal*

Gadsden appealed his conviction and sentence to the Appellate Division of the Supreme Court of New York, Second Department. He asserted four arguments on appeal: (1) the conviction was against the weight of the evidence since Deas did not identify him as a perpetrator of the robbery and he was acquitted of all charges based on the subsequent shooting; (2) the prosecutor's improper summation denied him a fair trial; (3) he was denied a fair trial when the prosecutor represented in opening statements that Deas would identify him as one of the robbers but then failed to ask her to identify him during her testimony; and (4) his sentence was excessive and did not sufficiently take into account substantial mitigating factors.

The Appellate Division affirmed Gadsden's conviction. *See People v. Gadsden*, 918 N.Y.S.2d 201 (App. Div. 2d Dep't 2011). Gadsden's claims were denied on the ground that they were unpreserved for appellate review and lacking merit. *Id.* Also, the Appellate Division

found that the sentence imposed was not excessive. *Id.* Gadsden sought leave to appeal to the New York Court of Appeals. His application for leave to appeal was denied on September 28, 2011. *People v. Gadsden*, 17 N.Y.3d 859 (N.Y. 2011) (Graffeo, J.).

## DISCUSSION

A.   *Legal Standard*

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal habeas relief is available when "a person in custody pursuant to the judgment of a State court . . . is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

1.   *The Exhaustion Requirement*

The exhaustion requirement, codified at 28 U.S.C. §§ 2254(b) and (c), obligates a federal habeas petitioner to exhaust state judicial remedies before seeking relief from a federal court. To exhaust state remedies, a petitioner must "fairly present" his federal constitutional claims to the highest state court with jurisdiction over them. *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (internal quotation marks and alterations omitted); *Daye v. Attorney General of New York*, 696 F.2d 186, 191 (2d Cir. 1981) (*en banc*). This requirement, which "springs primarily from considerations of comity" between the federal and state systems, affords the state system "the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Daye*, 696 F.2d at 191.

When a petition presents both exhausted and unexhausted claims, a federal court may stay the petition and hold it in abeyance to give the petitioner the opportunity to exhaust all of his claims. *See Rhines v. Weber*, 544 U.S. 269, 276 (2005). However, the court should do so only where it "determines there was good cause for the petitioner's failure to exhaust" and the

claim is not "plainly meritless." *Id*. A federal court must otherwise dismiss a mixed petition in its entirety on exhaustion grounds, *see Rose v. Lundy*, 455 U.S. 509 (1982), or allow the petitioner to amend the petition to withdraw the unexhausted claims, *Rhines*, 544 U.S. at 278. A federal court may also deny a petition on the merits, "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2); *see also Pratt v. Greiner*, 306 F.3d 1190, 1196-97 (2d Cir. 2002).

Even if a claim in a federal habeas petition has not been exhausted, a federal court may deem it exhausted if the court determines there are no avenues available in the state judicial system for reviewing the claim. *See* 28 U.S.C. §§ 2254(b)(1)(A)-(B) ("An application for a writ of habeas corpus . . . shall not be granted unless . . . the applicant has exhausted the remedies available in the courts of the State; or there is an absence of available State corrective process. . . ."); *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) ("When a claim has never been presented to a state court, a federal court may theoretically find that there is an absence of available State corrective process if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile."). But this "apparent salve . . . proves to be cold comfort to most petitioners" because the finding that the claims can no longer be exhausted requires the federal court to deem the claims procedurally defaulted. *Id*. at 90, *see also Sweet v. Bennett*, 353 F.3d 135, 140 (2d Cir. 2003). A federal habeas court may only review a procedurally barred claim on the merits if the petitioner can demonstrate cause and actual prejudice, or that failure to consider the claim would result in a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

        2.      *The Adequate and Independent State Ground Doctrine*

A federal habeas court may not "review a claim rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Walker v. Martin*, 131 S.Ct. 1120, 1127 (2011) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)) (internal quotation marks and alterations omitted); *Harris v. Reed*, 489 U.S. 255, 261-62 (1989). The adequate and independent state ground doctrine, like the exhaustion requirement, is "grounded in concerns of comity and federalism." *Coleman*, 501 U.S. at 730. Without this doctrine, "habeas would offer state prisoners whose custody was supported by independent and adequate state grounds . . . a means to undermine the State's interest in enforcing its laws." *Id.* at 730-31.

A state procedural default qualifies as an adequate and independent ground and will preclude federal habeas review "unless the habeas petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice."[1] *Harris*, 489 U.S. at 262; *accord Coleman*, 501 U.S. at 750. This holds true any time "a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990); *accord Harris*, 489 U.S. at 264 n.10 ("[A] state court need not fear reaching the merits of a federal claim in an *alternative* holding."); *Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996). Thus, "as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision," the adequate and independent state ground doctrine "curtails reconsideration of the federal issue on federal habeas." *Harris*, 489 U.S. at 264 n.10. "However, the state law ground

---

[1] When the independent and adequate state ground is a state procedural default, the doctrine also give teeth to the exhaustion requirement. For without the independent and adequate state ground doctrine, "habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court." *Walker*, 131 S.Ct. at 1127 (quoting *Coleman*, 501 U.S. at 732).

6

is only adequate to support the judgment and foreclose review of a federal claim if it is 'firmly established and regularly followed' in the state." *Garvey v. Duncan,* 485 F.3d 709, 713 (2d Cir. 2007) (quoting *Lee v. Kemna,* 534 U.S. 362, 376 (2002)). "Further, in certain limited circumstances, even firmly established and regularly followed state rules will not foreclose review of a federal claim if the application of the rule in a particular case is 'exorbitant.'" *Id.* at 713–14 (quoting *Lee,* 534 U.S. at 376); *see also Lee v. Kemna*, 534 U.S. 362 (2002) (recognizing that "[t]here are . . . exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question").

3. *AEDPA Deference to State Court Decisions on the Merits*

A federal habeas court may grant habeas relief "with respect to a[ ] claim that was adjudicated on the merits in State court proceedings" only if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence in the State court proceeding." 28 U.S.C. §§ 2254(d).[2] In addition, a federal habeas court must presume all state court factual determinations to be correct, unless the petitioner rebuts them by clear and convincing evidence. *Id*. § 2254(e)(1). AEDPA's deferential review applies whenever a state court disposes of a state prisoner's federal claim on the merits, regardless of whether it gives reasons for its determination or refers to federal law in its decision. *See Harrington v. Richter*, 131 S. Ct. 770, 785 (2011); *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

The Supreme Court has interpreted the phrase "clearly established Federal law" to mean "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of

---

[2] This limitation on relief is frequently referred to as "AEDPA deference." *E.g.*, *Cullen v. Pinholster*, 131 S. Ct. 1388, 1410 (2011); *Berghuis v. Thompkins*, 130 S. Ct. 2250, 2265 (2010); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003).

7

the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001). A decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* Elaborating on the "unreasonable application" standard, the Supreme Court has held that a habeas court may only "issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." *Richter*, 131 S. Ct. at 786 (2011).

     B.    *Gadsden's Asserted Grounds for Relief*

          1. *Prosecutorial Misconduct*

Gadsden argues that various instances of prosecutorial misconduct denied him due process and his right to a fair trial. His claims are based on the prosecutor's opening statement and summation.

          a.    *The Opening Statement*

In his opening remarks the prosecutor argued to the jury that Dixon and Deas were standing together at 545 Greene Avenue when they were robbed by two assailants on July 31, 2006. Additionally, the prosecutor argued, "[t]hey will tell you immediately they recognized [Gadsden] as one of those individuals." Tr. at 13. Despite contending that Deas would be able to identify Gadsden as one of the robbers, the prosecutor did not ask Deas to make an

8

identification during her testimony. Gadsden did not object. Gadsden now argues that the prosecutor's failure to ask Deas to identify Gadsden as one of the robbers or to inform the jury that Deas was unable to identify the robbers, in light of his opening remarks, was prosecutorial misconduct.

The Appellate Division held that Gadsden "failed to preserve for appellate review his claim that he was deprived of a fair trial because the prosecutor stated, in his opening statement, that two eyewitnesses would identify the defendant, but thereafter failed to ask one of the eyewitnesses whether she could in fact identify the defendant." *People v. Gadsden*, 82 A.D.3d at 903. The Appellate Division further held that "[i]n any event, absent bad faith or undue prejudice, a prosecutor's failure to prove every statement in his or her opening will not result in the reversal of a jury verdict. . . Here, there is no evidence that the prosecution acted in bad faith and, under the circumstances of this case, the defendant was not prejudiced." *Id*.

The Appellate Division's holding, relying on New York's contemporaneous objection rule, that Gadsden's claim was unpreserved establishes a procedural bar. This is so despite its alternative holding that the claim was without merit. *See Green v. Travis,* 414 F.3d 288, 294 (2d Cir. 2005) ("[E]ven when a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted.").

A federal habeas court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson,* 501 U.S. at 729. A determination that a claim is unpreserved is a sufficient indication that the state court denied the claim on state procedural grounds. *See Green*, 414 F.3d at 294.

9

Under the New York contemporaneous objection rule, codified at N.Y.C.P.L. § 470.05(2), appellate review of a trial court ruling is precluded unless an objection was made to the ruling "by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same." As interpreted by New York courts, the rule "require[s], at the very least, that any matter which a party wishes to preserve . . . be brought to the attention of the trial court at a time and in a way that gave [it] the opportunity to remedy the problem and thereby avert reversible error." *Whitley v. Ercole,* 642 F.3d 278, 286 (2d Cir. 2011) (internal quotation marks and citations omitted). Therefore, a defendant must contemporaneously and specifically raise his constitutional arguments before the trial court. *See, e.g. People v. Angelo,* 88 N.Y.2d 217, 221 (1996) (finding constitutional claims unpreserved where defendant did not present them to the state court when making his evidentiary objection); *Wright v. Duncan,* 500 Fed. Appx. 36, 38 (2d Cir. 2012) ("[T]he New York Court of Appeals has long rejected invitations to review constitutional arguments purportedly raised implicitly in the trial court."). Courts have repeatedly found New York's contemporaneous objection rule adequate—i.e., "firmly established and regularly followed." *E.g., Downs v. Lape,* 657 F.3d 97, 103-104 (2d Cir. 2011); *Richardson v. Greene,* 497 F.3d 212, 219 (2d Cir. 2007); *Garvey,* 485 F.3d at 718.

Gadsden would nonetheless be entitled to consideration of his claim for habeas relief if the state court's decision was an exorbitant application of New York's contemporaneous objection requirement. However, my review of the record confirms that Gadsden did not object after Deas's testimony, when she failed to make an identification as promised by the prosecution. The contemporaneous objection rule seeks to ensure that the parties draw the trial court's attention to any potential error while there is still an opportunity to address it. *Whitley*, 642 F.3d

10

at 288. Accordingly the Court finds no misapplication of the rule, much less an exorbitant one. Gadsden's claim is thus procedurally defaulted. As he has failed to advance any argument regarding cause and prejudice to excuse the procedural default or suggesting that a fundamental miscarriage of justice would occur if this claim is not considered, the Court finds review of this claim barred by the procedural default doctrine. *Coleman,* 501 U.S. at 750; *Harris v. Reed,* 489 U.S. 255, 262 (1989); *Bossett v. Walker,* 41 F.3d 825, 829 (2d Cir. 1994) (finding that a petitioner did not meet the cause and prejudice showing where he did not give any reason for failing to raise pertinent issues on appeal in state court).

Further, even if I were to consider the Appellate Division's alternative holding on the merits, Gadsden would not be entitled to relief.

"The appropriate standard of review for a claim of prosecutorial misconduct on a writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'" *Floyd v. Meachum*, 907 F.2d 347, 353 (2d Cir. 1990) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). Thus, habeas relief is not warranted unless "the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); *see United States v. Young*, 470 U.S. 1, 11–12 (1985). The comments must constitute "egregious misconduct," *Floyd*, 907 F.2d at 353, and result in actual prejudice, meaning that the comments had a "substantial and injurious effect or influence in determining the jury's verdict," *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994).

The United States Supreme Court has declined to find reversible constitutional error where anticipated testimony summarized in the prosecution's opening statement did not come to pass, at least where a limiting instruction is given. The Court explained:

> [H]ere we have no more than an objective summary of evidence which the prosecutor reasonably expected to produce. Many things might happen during the course of the trial which would prevent the presentation of all the evidence described in advance. Certainly not every variance between the advance description and the actual presentation constitutes reversible error, when a proper limiting instruction has been given . . . [I]t does not seem at all remarkable to assume that the jury will ordinarily be able to limit its consideration to the evidence introduced during the trial. At least where the anticipated, and unproduced, evidence is not touted to the jury as a crucial part of the prosecution's case, it is hard for us to imagine that the minds of the jurors would be so influenced by such incidental statements during this long trial that they would not appraise the evidence objectively and dispassionately.

*Frazier v. Cupp,* 394 U.S. 731, 736 (1969) (internal quotation marks omitted); *see Bramble v. Griffin,* No. 12 CIV. 1697 (BMC), 2012 WL 2930146, at *8 n. 4 (E.D.N.Y. July 18, 2012) ("Although *Frazier* focused specifically on the Confrontation Clause, its analysis is equally applicable to a due process challenge.").

Here, the challenged comment was isolated in nature and was immediately preceded by the trial court's instruction that the prosecution's opening statement was not evidence. Tr. at 11. Further, in summation both the prosecution and defense noted that Deas did not identify Gadsden as one of the robbers. Tr. at 451, 423. Viewed in the context of the entire trial, the prosecutor's erroneous prediction was not sufficiently significant to have denied Gadsden due process. *See,e.g. Donnelly*, 416 U.S. at 646 ("The consistent and repeated misrepresentation of a dramatic exhibit in evidence may profoundly impress a jury and may have a significant impact on the jury's deliberations. Isolated passages of a prosecutor's argument, billed in advance to the jury as a matter of opinion not of evidence, do not reach the same proportions.") (internal quotation marks omitted); *Tankleff,* 135 F.3d at 253 (holding that the "short and fleeting" comments made by the prosecutor were "less likely to have had a substantial effect on the jury's verdict" and that the trial court's standard instruction, *inter alia,* that the

attorneys' arguments on summation are not evidence was "probably sufficient to cure any harm that the prosecutor's misstatements may have caused.")

Accordingly, the Appellate Division's rejection of Gadsden's claim was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Therefore, Gadsden's claim is denied.

      b.    *The Summation*

Gadsden argues that certain remarks in the prosecution's summation were improper and deprived him of his right to a fair trial. Specifically, Gadsden claims that the prosecutor improperly commented on his failure to testify, shifted the burden of proof to Gadsden, vouched for the credibility of a government witness, and expressed his personal belief in Gadsden's guilt.

The Appellate Division held that these claims of prosecutorial misconduct were "unpreserved for appellate review." *People v. Gadsden*, 82 A.D.3d at 903. It further held that "[i]n any event, most of the challenged remarks were fair comment on the evidence, permissible rhetorical comment, or fair response to the defense counsel's summation . . . To the extent that the prosecutor exceeded the bounds of permissible rhetorical comment, any error was harmless." *Id.*

Once again, the Appellate Division's rejection of this claim constitutes an independent and adequate state procedural ground precluding federal habeas review of this claim. *Harris*, 489 U.S. at 262; *Richardson*, 497 F.3d at 217-220. Gadsden has failed to advance any argument regarding cause for the procedural default or to suggest that a fundamental miscarriage of justice would occur if his claim is not addressed. Therefore,

13

Gadsden's claims based on the prosecution's summation are procedurally barred on an independent and adequate state ground. *Silent v. Perlmann*, No. 07 CV 4524 (JFB), 2008 WL 5113418, at *7 (EDNY Nov. 25, 2008).

In any event, Gadsden's claims are substantively without merit. First, Gadsden contends that the prosecutor remarked on his failure to testify and shifted the burden of proof arise from the following statement:

> [Dixon had no] beef with, no quarrels [with Gadsden]. He never had any problems with the defendant, and that is the testimony. You can have it read back, and you have not heard any testimony to the contrary.

Tr. at 450. Gadsden objected to this statement. The court overruled the objection but instructed the jury that its recollection of the evidence controlled. *Id.* The prosecutor then continued, "the burden to prove the case stops here beyond a reasonable doubt, and I welcome it…" *Id.*

A prosecutor may not comment on the defendant's failure to testify, or suggest that the defendant has any burden of proof or an obligation to adduce any evidence. *Griffin v. California*, 380 U.S. 609, 615 (1965); *United States v. Bautista*, 23 F.3d 726, 733 (2d Cir. 1994). But a constitutional violation does not occur unless the prosecutor's comments necessarily implicate the defendant's failure to testify. *United States v. Bubar,* 567 F.2d 192, 199 (2d Cir. 1997).

Here, the prosecutor's reference to lack of "testimony to the contrary" is not necessarily a comment on Gadsden's decision to not testify. Contrary testimony could have been elicited from defense or state witnesses, not only Gadsden. *See People v. Watson*, 188 A.D.2d 315, 315 (1st Dep't 1992) (prosecutorial comment that the evidence was uncontroverted need not be construed as an improper allusion to a defendant's failure to testify); *see also People v. Staples*, 212 A.D.2d 1052, 1053 (4th Dept. 1995) (prosecutor's comment that certain testimony

14

is "unchallenged" does not constitute a comment on defendant's failure to testify). Because the prosecutor's statement was not, in context, a reference to Gadsden's failure to testify, it did not affect Gadsden's constitutional rights under the Fifth Amendment.

Further, Gadsden argues that the prosecutor's statement that there was no "testimony to the contrary" improperly shifted the burden of proof to the defendant. The prosecution argued there was no basis for the jury to reject Dixon's testimony as untruthful because there was no evidence that Dixon had a motive to falsely accuse Gadsden of robbing him. This one remark, which was based on the evidence, did not explicitly or implicitly shift the burden of proof. Additionally, the trial court properly and carefully instructed the jury that the prosecution must prove beyond a reasonable doubt that Gadsden committed the crime. Tr. at 494.

Next, Gadsden argues that the prosecutor improperly vouched for the credibility of Dixon and expressed a personal belief in Gadsden's guilt in the following statements:

> In evaluating the testimony of Ernest Dixon, there are only three possibilities: [o]ne Ernest Dixon is mistaken; two, Ernest Dixon is lying that this defendant is the one who robbed him, or three, the defendant is guilty.
>
> Ernest Dixon is not mistaken. Ernest Dixon wasn't lying. . . . Therefore, the defendant is guilty.

Tr. at 444, 455.

It is well-established that prosecutors may not "vouch for their witnesses' truthfulness." *United States v. Modica,* 663 F.2d 1173, 1179 (2d Cir. 1981). A prosecutor is prohibited from "express[ing] his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant." *Id.* at 1178 (citation and internal quotation marks omitted). However, when defense counsel has attacked the credibility of government

15

witnesses, a prosecutor is entitled to reply with rebutting language. *See United States v. Carr*, 424 F.3d 213, 227 (2d Cir. 2005).

Here, Gadsden challenged Dixon's credibility, arguing that he was unworthy of belief and noting the inconsistencies between his testimony and that of other witnesses. Tr. at 422-423, 425-26, 435-436. Gadsden also noted that Dixon possessed an illegal gun (Tr. at 437) and that "rather than the government ask that he be taken into custody . . . [h]e got a free pass" (Tr. at 438). The prosecutor responded to the attack on Dixon's credibility by arguing Dixon was mistaken or lying or Gadsden was guilty. Tr. at 444, 455. In support of its argument that Dixon was a credible witness, the government argued the jury should consider Dixon's opportunities to view Gadsden during the robbery (*id.* at 445, 447), and that Dixon knew Gadsden from the neighborhood and saw him "practically every day" for eight years (*id.* at 446) and never had any problems with him (*id.* at 450). The prosecutor also referred to Dixon's demeanor while testifying (*id.* at 451).

In light of defense counsel's own summation, the prosecutor's statements were not improper. *E.g., United States v. Young,* 470 U.S. 1, 12–13 (1985) ("[A] reviewing court must also take into account defense counsel's opening salvo . . . if the prosecutor's remarks were 'invited,' and did no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction.").

Gadsden also argues that in these statements the prosecutor expressed a personal belief in Gadsden's guilt. The prosecutor's remarks during summation were not improper because, when viewed in context, they were clearly based on the evidence rather than personal convictions. *See United States v. Herredia,* 153 F. App'x 50, 54 (2d Cir. 2005) ("Here . . . the prosecutor was properly discussing the evidence and was not referring to his personal beliefs or

16

to any additional information he might have had."). As described above, the prosecutor marshaled the evidence he believed supported Dixon's version of events and, following the evidence, supported Gadsden's guilt. The prosecutor relied on the evidence presented and did not use personal pronouns to indicate personal knowledge of the defendant's guilt or allude to extrinsic evidence. *See United States v. Rivera,* 22 F.3d 430, 437 (2d Cir. 1994) (noting that prosecutors should not use personal pronouns because "it tends to make an issue of [the prosecutor's] own credibility, or to imply the existence of extraneous proof"). Therefore, the prosecutor's statements did not express a personal belief in Gadsden's guilt.

In any event, the trial court minimized any prejudice to petitioner in its instructions to the jury. Before summations the court instructed the jury that it was free to accept or reject all or part of the inferences or conclusions urged upon them by counsel. Tr. 417-18. And after summation the court instructed the jurors that they alone were the judges of the facts (Tr. at 480-81), that the evidence consisted only of the testimony and exhibits (Tr. at 482), that summations were not evidence, and that they were free to accept or reject the arguments of counsel as they saw fit (Tr. at 483).[3]

I conclude that the Appellate Division's denial of this claim was not contrary to or an unreasonable application of clearly established law and Gadsden is not entitled to relief on this claim.

2. *Conviction Against the Weight of the Evidence*

Gadsden argues that the guilty verdict for the July 31, 2006 robbery was against the weight of the evidence. It is well-established that such a claim is exclusively a matter of state

---

[3] To the extent that Gadsden argues that the prosecution cited to facts not in evidence (*i.e.*, the reason Deas did not identify Gadsden), the court's jury instructions similarly minimized any prejudice. The trial judge made it clear that the jury was to follow the law and facts as he instructed them and not what the prosecution may have suggested in summation.

law grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles. *See, e.g., McKinnon v. Superintendent, Great Meadow Corr. Facility,* 422 F. App'x 69, 75 (2d Cir. 2011) ("the argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus"); *Garrett v. Perlman,* 438 F.Supp.2d 467, 470 (S.D.N.Y. 2006) (weight of evidence claim is a state law claim arising under N.Y.Crim. Proc. Law § 470.15 and therefore does not present a federal question).

Accordingly, I am precluded from considering this claim. *See* 28 U.S.C. § 2254(a) (permitting federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty"); *Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990) (*habeas corpus* review is not available where there is simply an alleged error of state law).

3. *Excessive and Unduly Harsh Sentence*

Gadsden argues that though his sentence fell within the statutory range for his robbery conviction, it was harsh and excessive given the mitigating factors presented at trial. *See* Ex. B at p. 36.

It is well-settled that "[n]o federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law." *White v. Keane,* 969 F.2d 1381, 1383 (2d Cir. 1992) (*per curiam*). The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only "extreme sentences that are grossly disproportionate" to the crime. *Ewing v. California,* 538 U.S. 11, 23 (2003) (citing *Harmelin v. Michigan,* 501 U.S. 957, 1001 (1991)). "Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel v. Estelle,* 445 U.S.

263, 272 (1980). Gadsden's challenge is no exception. At the time of the offense, New York law permitted a term of up to twenty-five years for robbery in the first degree (P.L. §§ 70.02(1)(a), (3)(a)), and a maximum sentence of fifteen years for robbery in the second degree (P.L. §§ 70.02(1)(b), (3)(b)). Gadsden received concurrent terms of imprisonment of fifteen years for the first degree robbery count and five years on the second degree count. No gross disproportionality is presented here.

## CONCLUSION

For the reasons stated above, Gadsden's petition for writ of habeas corpus is denied in its entirety. Because Gadsden has failed to make a substantial showing that he was deprived of a federal constitutional right, no certificate of appealability shall issue.

So ordered.

John Gleeson, U.S.D.J.

Dated: July 30, 2013
      Brooklyn, New York